In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-3830

TAMRA ROSS, individually and as personal
representative of the Estate of Kenneth Wayne Ross,

*Plaintiff-Appellant,*

*v.*

TOWN OF AUSTIN, INDIANA, TOWN OF AUSTIN,
INDIANA, POLICE DEPARTMENT, and MARVIN RICHEY,
Police Chief, Town of Austin, Indiana,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, New Albany Division.
No. 01 C 15—**Sarah Evans Barker**, *Judge.*

ARGUED APRIL 17, 2003—DECIDED SEPTEMBER 16, 2003

Before BAUER, MANION, and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-Appellant Tamra Ross
appeals the district court's entry of summary judgment in
favor of the Town of Austin, Indiana, the Austin Police
Department ("APD"), and APD Chief Marvin Richey on
Tamra's substantive due process claims alleging that APD
Officer Lonnie Noble's inadequate training resulted in the

murder by Gregory Miller of her husband, Kenneth Ross. For the reasons set forth herein, we affirm the decision of the district court.

## BACKGROUND

Austin is a small town in Scott County, Indiana, with a population of approximately 4500. Austin Police Officer Lonnie Noble completed basic training at the Indiana Law Enforcement Academy in 1995. At all times relevant for purposes of this appeal, he had satisfied all state-mandated training requirements and maintained his annual firearm qualification. Neither Noble nor any other member of the APD had received training in tactical combat weapons use or hostage negotiations. At the time of the incidents giving rise to this litigation, Chief Richey had not completed a state-mandated police chief executive training program nor had the Town required him so to do. At his deposition, Richey stated that his "philosophy is [that] the best training is on the street."

On the morning of February 28, 2000, while responding to reported gunfire at an elementary school, Noble encountered a multiple-vehicle collision at an intersection near adjacent convenience and liquor stores in Austin. At that moment, Noble observed Gregory Miller, who had just attempted to shoot his estranged wife as she shuttled their children to school, exit one of the collided vehicles and, armed with a shotgun, approach the convenience store. Noble immediately entered the stores' shared parking lot to prevent Miller's entry into the convenience store, exited his police vehicle armed with a shotgun of his own, ordered Miller to drop his raised weapon, and directed as many as fifteen bystanders to "get down." For his safety and that of the bystanders, Noble, who was not wearing a bulletproof vest, took cover behind a truck parked near the

convenience store entrance and observed Miller's movements from a distance of approximately twelve feet. From this location, despite several opportunities to fire a clear shot at Miller, Noble was unwilling to discharge his weapon in such close proximity to the bystanders. Miller's access to the convenience store thus obstructed, he instead entered the adjacent liquor store where he took Kenneth Ross, a store manager, hostage.

Thereafter, Scott County law enforcement dispatchers telephoned the liquor store. Miller informed them that he would release Kenneth only if permitted first to speak with his estranged wife, whom Noble then authorized the dispatchers to attempt to contact. Once connected, Miller's heated conversation with his wife ended abruptly with a single gunshot. Richey arrived shortly thereafter and ceded authority over the situation to the Indiana State Police, who discovered the bodies of Kenneth and Miller inside with fatal gunshot wounds—Miller's self-inflicted.

Tamra filed a civil action under 42 U.S.C. § 1983, alleging that Appellees' failure to provide Noble with tactical combat and hostage negotiation training effected a violation of Kenneth's substantive due process rights under the Fourteenth Amendment. Had Noble received such training, she reasoned, he would have conducted himself in a way that would have better protected Kenneth from Miller's actions. Such training might have led Noble, for example, to avoid "channeling" Miller into the liquor store, to decide to shoot Miller (perhaps because he would have selected a better suited weapon or been wearing a bulletproof vest), or to secure a peaceful resolution to the hostage situation. Based upon its determination that, despite the tragedy of Kenneth's murder, neither the decedent nor Tamra suffered any constitutional injury, the district court granted Appellees' motion for summary judgment.

This appeal ensued.

## ANALYSIS

We review the district court's grant of summary judgment de novo. *See, e.g.*, *Wainscott v. Henry*, 315 F.3d 844, 848 (7th Cir. 2003). Summary judgment is proper where there is no genuine issue as to any material fact. Such is the case where the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, because a complete failure of proof concerning an essential element of her case necessarily renders all other facts immaterial. In such a case, the moving party is entitled to judgment as a matter of law and summary judgment must issue against the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); FED. R. CIV. P. 56(c).

To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that some person acting under color of state law deprived her of a constitutional right. *See, e.g.*, *Smith v. City of Chicago*, 820 F.2d 916, 917 (7th Cir. 1987). That Appellees and Noble acted under color of state law is undisputed. Rather, the focus of our inquiry is whether Tamra or Kenneth suffered a constitutional injury; namely, a violation of the Due Process Clause of the Fourteenth Amendment.

Tamra's allegation of constitutional injury is founded solely on her contention that Noble's lack of training and Richey's failure to attend a mandatory police chief executive training program, as well as his attitude toward police training generally, demonstrate a systematic failure on the part of Appellees to train police. Under this theory, such training would have better prepared Noble to respond to Miller's actions by, for example, shooting Miller, or selecting a different weapon, or wearing a bulletproof vest, or not

placing Miller in contact with his wife, thereby avoiding further agitation of Miller and endangerment of Kenneth.[1]

The Supreme Court has held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton v. Harris*, 489 U.S. 378, 388 (1989). This Court has further explained that a "finding of 'deliberate indifference' is derived from [a municipality's] failure to act in the face of 'actual or constructive notice' that such a failure is likely to result in constitutional deprivations." *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997). Tamra reasons that the APD's awareness of past *armed robberies* placed Appellees on notice that constitutional violations—namely deprivation of life without due process of law—were likely to result to Austin citizens absent the training of APD officers in tactical combat weapons use and hostage negotiations. However, 42 U.S.C. § 1983 imposes upon municipalities no constitutional duty to provide law enforcement officers with advanced, specialized training based upon a general history of criminal activity in the community. Here, the fact that APD officers had dealt with armed felons in the past did not obligate Appellees to anticipate the utility of hostage negotiation or tactical combat training. In the context of a failure-to-train claim, deliberate indifference does not equate with a lack of strategic prescience.

The fact that Noble, a police officer in a town with a population of fewer than 5000, completed training from the

---

[1] Though the district court individually addressed each of Tamra's criticisms of Noble's reaction to the situation, her claim under 42 U.S.C. § 1983 fails absent a successful showing that Appellees maintained a policy of inadequately training APD officers. Because, as a matter of law, she has made no such showing, we need not address her criticisms of Noble's actions individually.

Indiana Law Enforcement Academy and had met all other statutorily mandated training standards, is further evidence that, as a matter of law, it was not the policy of Appellees inadequately to train police officers. By creating a law requiring municipalities to exceed the standards for police training established by state law, not only would this court exceed the scope of our judicial authority by usurping the policy-making authority of state legislators, but we would also impose upon smaller municipalities such as Austin, the untenable burden of maintaining the same standards of law enforcement training specialization as those of large cities or even national armies. Even were it within the province of this court to establish such a policy, it seems neither wise nor practical.

Finally, neither Richey's preference for "street" training of police officers nor his failure to attend a mandatory state training program for chiefs of police evinces an official policy of inadequately training APD officers or a deliberate indifference to the constitutional rights of the citizens of Austin. It does not follow logically from Richey's more favorable opinion of the value of on-the-job experience that he or the APD eschewed formal training as a matter of policy. Nor does his own failure to attend the mandatory training program demonstrate that he, the APD, or the Town had adopted a policy of failing to train Noble or other officers. Tamra does not suggest, and we do not discern, what constitutional harm might have been avoided by Richey's attendance of the training program.

## CONCLUSION

Kenneth Ross was the unfortunate victim of the actions of a disturbed, homicidal individual. He was not, however, the victim of any constitutional injury. For this reason,

Tamra Ross's claim under 42 U.S.C. § 1983 cannot withstand summary judgment.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*